## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

_____
                                )

| | |
|---|---|
| JANICE MARTIN, on behalf of herself, ) and all others similarly situated, ) | |
| Plaintiff, ) | Civil Action No.: 1:16-cv-20195 |
| v. ) | **CLASS ACTION** |
| VOLKSWAGEN GROUP OF AMERICA, INC., ) VOLKSWAGEN AG, SANTANDER ) CONSUMER USA INC., VERITAS AUTO ) FINANCE, LLC, and JOHN DOES 1-25, ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

_____ )

## CLASS ACTION COMPLAINT

Plaintiff Janice Martin ("Plaintiff"), on behalf of herself and a class of all others similarly situated, brings this class action against Defendants Volkswagen Group of America, Inc., Volkswagen AG, and Santander Consumer USA Inc. and Veritas Auto Finance, LLC, individually and as representatives of a defendant class of automobile financing companies, named herein as John Does 1-25, which financed for sale or lease the Defective Automobiles (as defined below) (hereinafter collectively referred to as "Defendants"). Plaintiff's allegations herein are based on her personal knowledge as to herself and upon information and belief and the investigation of her counsel as to all other matters.

1

## SUMMARY OF ACTION

1.      Volkswagen Group of America, Inc. (together with Volkswagen AG, "VW"), beginning in 2009 or earlier, intentionally violated the laws of the United States and the regulations of the United States Environmental Protection Agency (the "EPA") by selling automobiles in the United States that had a sophisticated software algorithm in the engine control module which is defined in the Clean Air Act as a "defeat device." This defeat device detected when a car's engine was being tested for compliance with emissions standards, and would switch the car to an operating mode that would enable the car to appear to pass vehicle emissions standards. At all times other than in emissions testing mode, the engine control module would suppress emission controls and switch the car's operating mode to emit from 10 to 40 times the quantity of nitrogen oxides allowed by federal emissions standards. Nitrogen oxides are highly reactive gases that contribute to ground-level ozone, fine particulate, and nitrogen dioxide pollution. Exposure to these pollutants is a recognized cause of respiratory illnesses.

2.      The defeat device was installed in thousands of VW and Audi vehicles with TDI "clean diesel" engines for model years 2009-2015. VW had engaged in a massive widespread marketing campaign touting the fuel efficiency and environmental benefits of their TDI "clean diesel" engine.  Consumers thus viewed the TDI "clean diesel" as an opportunity to address concerns relating to fuel consumption and greenhouse gas emissions, while at the same time not sacrificing power and performance.

3.     Indeed, VW spent millions of dollars convincing consumers that their TDI "clean diesel" engines not only met emission standards, but were substantially lower than such standards and better for the environment than other vehicles. VW's claims about emissions and benefits to the environment from these vehicles were patently false.

4.     The EPA has established regulations with strict emissions standards, and every vehicle sold in the United States must meet these emissions standards to help control air pollution.  On September 18, 2015, the EPA sent VW a Notice of Violation (the "Notice of Violation") informing VW that the EPA had discovered the defeat device in 2.0 liter diesel engines in at least the following diesel models of VW's vehicles: 2009-2015 VW Jetta; 2009-2015 VW Beetle; 2009-2015 VW Golf; 2014-2015 VW Passat; and 2009-2015 Audi A3.

5.     The EPA has also charged that certain 3.0 liter diesel engines may also have defeat devices installed, including the 3.0-liter diesel six-cylinder 2014 VW Touareg, the 2015 Porsche Cayenne, and the 2016 Audi A6 Quattro, A7 Quattro, A8, A8L and Q5.

6.     Thus, VW's unlawful, unfair, and fraudulent business practices, false advertising, and knowing misrepresentations injured hundreds of thousands of American consumers. These consumers purchased and paid a premium for the VW Defective Automobiles (as defined below) based on VW's false representations that the vehicles not only met the relevant emissions criteria, but that such emissions were much lower than the vast majority of the vehicles on the road.

3

7.     Plaintiff and the Class members overpaid for the VW Defective Automobiles and did not receive the benefit of their bargain, and their VW Defective Automobiles have suffered a diminution in value, including resale and trade-in value.

8.     Plaintiff and the Financing Class are unjustly and wrongfully required to continue to make payments on contracts (the "Financing Contracts") they entered into in connection with the financing of the purchase or lease of their Defective Automobiles.

## PARTIES

9.     Plaintiff Janice Martin is a resident of Sarasota County, Florida, and citizen of the State of Florida. On or about May 23, 2015 she purchased a 2015 Volkswagen Golf TDI diesel from Port Charlotte Honda VW in Port Charlotte, Florida.

10.     Volkswagen Group of America, Inc. is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business in Herndon, Virginia. VW was the manufacturer, promoter, and/or seller of Defective Automobiles under the Volkswagen and Audi brand names to consumers in the United States. Defendant Volkswagen Group of America, Inc. is a wholly owned subsidiary of Defendant Volkswagen AG.

11.     Defendant Volkswagen AG is a corporation organized and existing under the laws of Germany, with its principal place of business located in Wolfsburg, Germany.

12.     Defendant Santander Consumer USA Inc. ("Santander") is a Delaware corporation located in Fort Worth, Texas.

13.     Defendant Veritas Auto Finance, LLC ("Veritas") is a Delaware limited liability company located in Santa Ana, California.

14.     Defendants John Does 1-25 are those companies or entities that financed, on behalf of any of the members of the Financing Class (as defined below), the purchase or lease of any of the Defective Automobiles (as defined below), or purchased or were assigned the Financing Contracts (as defined below). The identity of all of the John Does 1-25 is not currently known to plaintiff, but they are understood to include at least VW Credit, Inc., and the automobile financing affiliates of JP Morgan Chase Bank, N.A., Bank of America, N.A. and Wells Fargo Bank, N.A.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court has personal jurisdiction over VW because it conducts business in Florida and has sufficient minimum contacts with Florida based on sales of thousands of vehicles in the state. This Court has personal jurisdiction over Santander and Veritas because they each conduct business in Florida and have sufficient minimum contacts with Florida based on the financing of hundreds if not thousands of vehicles in the state.

16.     Venue is proper in this District under 28 U.S.C. § 1391(a) because many of

the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants have caused harm to Class members residing in this District.

## ADDITIONAL SUBSTANTIVE ALLEGATIONS

17.     The EPA administers a certification program to ensure that every vehicle introduced in the United States meets applicable emissions standards. For a vehicle to be introduced into United States commerce, the EPA must issue a Certificate of Conformity ("COC").

18.     The COC application must include, among other things, a list of all auxiliary emission control devices ("AECDs") that are installed on the vehicle. Under federal regulations, an AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01.

19.     Like other vehicles, VW's COCs must include "a justification for each AECD, the parameters they sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and [a] rationale for why it is not a defeat device." 40 C.F.R. § 86.1844-0l (d)(11).

20.     Federal regulations define a "defeat device" as a device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 C.F.R. § 86.1803-

01. Defeat devices are prohibited unless they meet certain conditions, none of which are relevant here.

21.    Since VW introduced its 2.0L TDI Clean Diesel engine in 2008, VW has touted it as a "fantastic power train" that "gives very good fuel economy" that "is also good for the environment because it puts out 25% less greenhouse gas emissions than what a gasoline engine would, … cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95%, … [and is] clean enough to be certified in all 50 states." (Statement of Volkswagen Group of America, Inc.'s Chief Operating Officer Mark Barnes, to The Business Insider, October 9, 2009).

22.    VW, however, failed to disclose that these VW "clean diesel" vehicles were engineered to be able to detect when they were being tested and to switch the manner in which the emissions system operated to be able to achieve those reductions in nitrogen oxides. Nor did VW disclose that, after circumventing the emissions laws of the United States, the VW "clean diesel" vehicles' emissions systems were programmed to run in a model that would result in up to 40 times the allowable quantities of nitrogen oxides being released into the atmosphere under normal operating conditions.

23.    VW relied on this fraud to position itself as the market leader in automotive diesel sales in the United States. According to VW's documents, VW had captured 78% of the automotive diesel sales in the United States by 2013. Indeed, 24 percent of Volkswagen sales in the United States in 2013 were for vehicles containing TDI "clean diesel" engines.

24.     Indeed, VW's print and web advertisements touted the environmental benefits of the TDI "clean diesel" engine. A VW press release said that cars incorporating the TDI "clean diesel" engine were "able to meet the toughest emissions standards" and therefore offer the "best of both worlds for people and the planet-greener fuel and greater economy." The press release represented that an independent study concluded that "Volkswagen tied Toyota for the lowest smog-forming pollutant emissions" and that "the newer and cleaner diesel models that Volkswagen now offers will be technologies to watch." http://update.vw.com/environment/fuel_efficiency.htm

25.     A press release from VW's website titled "Environmental" promoted the environmental benefits of the TDI "clean diesel" engine and proclaimed that the engine reduced nitrous oxide emissions by 90% and C02 emissions by 25%, resulting in "[t]he most efficient internal combustion engine.[1]"

26.     In addition to its advertising campaign, VW linked visitors to its website to www.clearlybetterdisel.org, which stated that  modern diesel engines "meet[] the highest standards in all 50 states, thanks to ultra-low sulfur (ULSD) fuel and innovative engine technology that burns cleaner."

27.     Because of VW's representations about the environmental benefits of the vehicle models utilizing the TDI "clean diesel" engine, vehicles with this engine received numerous awards.

---

[1] http://update.vw.com/environment/clean_diesel_tdi.htm

28.    The 2009 Volkswagen Jetta TDI Clean Diesel was named 2009 "Green Car of the Year" by the Green Car Journal. TDI "clean diesel" powered vehicles were included in many other "green car" lists.   JD Power and Associates recognized "Volkswagen Group of America ... as 'the most environmentally friendly car company selling in the USA.'"

29.    VW touted these green car awards in press releases and advertisements. VW stated that its TDI "clean diesel" vehicles "integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives.[2]" VW also charged a premium for its TDI "clean diesel" automobiles. VW also represented to purchasers or lessees that the trade-in value of diesel cars were higher than non-diesel cars. However, purchasers of the Defective Automobiles now have automobiles that have substantially reduced trade-in or resale value, if the Defective Automobiles can be traded in or sold at all.

30.    In 2014, West Virginia University's Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International Council on Clean Transportation that found significantly higher in-use emissions for VW's 2012 Jetta and 2013 Passat models. The International Council alerted the EPA and the California Air Resources Board ("CARB") about the emissions problems in May 2014.

31.    When faced with the results of this study, VW did not admit that the study

---

[2] http://update.vw.com/environment/index.htm

was correct or explain why the TDI "clean diesel" engines were able to meet emission requirements -- i.e., because of the software algorithm that allowed them to circumvent the emissions tests.

32.    Instead, VW continuously asserted to CARB and the EPA that the high emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions. VW issued a voluntary recall in December 2014 to supposedly address the issue.

33.    CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall. When the testing showed only a limited benefit to the recall, CARB broadened the testing to pinpoint the exact technical nature of the vehicles' emissions performance, and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions. None of the potential technical issues suggested by VW explained the higher test results consistently confirmed during CARB's testing.

34.    VW's inability to explain the emission issue, led the EPA to not issue COCs for the 2016 models.  When VW realized that it would be unable to import their 2016 models, they finally admitted that the TDI "clean diesel" cars contained the "defeat device" software.

35.    The EPA and CARB identified the vehicles as containing the defeat device used to circumvent the emissions tests, which are included among the Defective

Automobiles. VW (including Audi which is a part of the Volkswagen Group) sold nearly 500,000 of such vehicles with the defeat device.

36.     As noted above, on September 18, 2015, the EPA sent VW the Notice of Violation based on their use of the defeat device to circumvent emissions tests. In the Notice, the EPA said that it was illegal for VW to offer to sell or place in the stream of commerce the Defective Automobiles.

37.     On September 20, 2015, VW CEO Martin Winterkom admitted in a statement that, "I personally am deeply sorry that we have broken the trust of our customers and the public." Mr. Winterkom did not contest the allegations in the Notice of Violation.

38.     Following the Notice of Violation, VW ordered its dealerships in the United States to halt sales of new 2016 and remaining 2015 TDI "clean diesel" models with the engine containing the defeat device.

39.     The EPA also directed VW to recall all the Defective Automobiles and repair them to comply with emissions standards. However, on January 12, 2016, it was announced that CARB, backed by the EPA, had determined that the recall program or plan proposed by VW was unacceptable. Thus, even if a repair is possible, the repair will cause substantial changes in performance and efficiency in the Defective Automobiles, thus Plaintiff's and Class members' vehicles will no longer perform as they did when purchased and as advertised.

40.     Also, on January 11, 2016, it was also announced that a former FBI director

11

was appointed to serve as a settlement master for cases filed on behalf of victims of VW's

defeat devices in the Defective Automobiles.

## THE FINANCING CONTRACTS ARE SUBJECT TO THE SAME CLAIMS AND DEFENSES AS THOSE APPLICABLE TO VW

41.     Further, as to Defendants Santander and Veritas, in 1975, the Federal Trade

Commission ("FTC") enacted a Rule formerly known as the "Trade Regulation Rule

Concerning Preservation of Consumers' Claims and Defenses," 16 C.F.R. §433, and now

commonly referred to as the "FTC Holder Rule."  The FTC Holder Rule "is designed to

prevent the widespread use of credit terms which compel consumers to pay a creditor even

if the seller's conduct would not entitle the seller to be paid. It is designed to preserve the

consumer's legally sufficient claims and defenses so that they may be asserted to defeat or

diminish the right of a creditor to be paid, where a seller who arranges financing for a buyer

fails to keep his side of the bargain."[3] Thus, consumers can assert at a minimum, defenses

against Defendants Santander and Veritas and members of the Defendant Class based on

the fraudulent conduct of VW and withhold payments pending resolution of their claims,

including their claims for rescission due to fraud or illegality. As required by the FTC

Holder Rule, auto financing contracts must state that the holder of the credit contract is

subject to all claims and defenses which the purchaser could assert against the seller of the

goods purchased thereunder. Such a provision in the finance contract will therefore include

---

[3] Staff Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, published May 4, 1976, p. 6. Available at:
https://www.ftc.gov/system/files/documents/rules/holder-rule/760504hidcrule.pdf

language similar to the following:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEED HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNT PAID BY THE DEBTOR HEREUNDER.

42.     Therefore, pursuant to the FTC Holder Rule, Plaintiff may assert against Santander and Veritas, and members of the Financing Class may assert against members of the Defendant Class, all of the same claims and defenses they have as against VW for its fraud in employing the defeat device scheme, including the defense of not being required to make payments on their Financing Contracts as a result of the fraud of VW, that they could assert directly against VW related to their Defective Automobiles.

43.     Since Plaintiff and the members of the Financing Class may assert the same claims against Santander and Veritas and members of the Defendant Class as they could assert against VW, they may deduct their damages from the balances still due under their Financing Contracts. Thus, Plaintiff and the Financing Class are entitled to withhold from Defendants Santander and Veritas and members of the Defendant Class payments due on their Defective Automobiles.

44.     Therefore, in addition to rescission and damages, Plaintiff seeks herein declaratory and injunctive relief declaring that Plaintiff and the Financing Class need not make, and preventing Santander and Veritas and members of the Defendant Class from accepting, payments from Plaintiff and members of the Financing Class on the Financing Contracts that relate to the Defective Automobiles, and an injunction preventing

Defendants Santander and Veritas and members of the Defendant Class from reporting derogatory or negative information on credit reports of consumers who currently own the Defective Automobiles and who are excused from payment due to the fraud and illegality of the conduct which led to their entry into the Financing Contracts in connection with the purchase or lease of the Defective Automobiles.

## PLAINTIFF'S PURCHASE AND FINANCING OF A DEFECTIVE AUTOMOBILE

45.     Plaintiff purchased her Defective Automobile, a 2015 Volkswagen Golf TDI, with the understanding that representations made about the vehicle, including that it was a "clean diesel" engine and system, were true. However, although VW touted the cleanliness of the engine system for the environment, as well as the efficiency and power and performance of the engine system, VW's claims and representations about, among other matters, low emissions and benefits to the environment, were in fact false. Had VW disclosed that her Volkswagen Golf TDI contained a defeat device to circumvent emissions tests, she would not have purchased the vehicle or would have paid a much lower price for the vehicle. Plaintiff Janice Martin financed the purchase of her Defective Automobile through Defendant Santander, who to Plaintiff's knowledge subsequently assigned the contract to Defendant Veritas.

46.     As the findings of the EPA and CARB have confirmed, the Plaintiff and Class members have been injured and a recall will not compensate them for such injuries. To bring the Defective Automobiles into compliance with emissions standards, the vehicles

performance and fuel efficiency, and therefore value has been and will be diminished. Consumers will be left with a vehicle that is overall of significantly less value than the one that they bargained for.

## TOLLING OF STATUTE OF LIMITATIONS/CLAIM ACCRUAL

47. The Plaintiff and Class members had no realistic opportunity to know that the Defective Automobiles contained the defeat device. In addition, despite their due diligence, Plaintiff and the Class members could not reasonably have expected to learn or discover that VW concealed material information concerning the Defective Automobiles and the defeat devices.

48. VW's knowledge and active concealment of the defeat devices has tolled any applicable statute of limitation. VW is estopped from relying on any statute of limitation because the companies concealed the presence of the defeat devices from both government regulators and the general public.

49. Because the Plaintiff and Class members could not have reasonably known about the factual basis for their claims until (at the earliest) the EPA published the Notice of Violation, accrual of their claims did not begin until September 18, 2015.

## PLAINTIFF CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

15

51.     Plaintiff seeks to represent the following Plaintiff Classes:

The Purchasing Class is defined as:

All consumers in the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who currently own or lease, or previously owned or leased the following models with the TDI "clean diesel" engine ("Defective Automobiles"):

| Model Year | Make and Model(s) |
|---|---|
| 2009 | Volkswagen Jetta, Volkswagen Jetta Sportwagen |
| 2010 | Volkswagen Jetta, Volkswagen Jetta Sportwagen, Audi A3 |
| 2011 | Volkswagen Golf, Volkswagen Jetta, Volkswagen Jetta Sportwagen, Audi A3 |
| 2012 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Jetta, Volkswagen Jetta Sportwagen, Audi A3, Volkswagen Passat |
| 2013 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Jetta, Volkswagen Jetta Sportwagen, Audi A3, Volkswagen Passat |
| 2014 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Jetta, Volkswagen, Jetta Sportwagen, Audi A3, Volkswagen Passat and Volkswagen Touareg |
| 2015 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Golf Sportwagen, Volkswagen Jetta, Volkswagen Passat, Audi A3 and Porsche Cayenne |
| 2016 | Audi A6 Quattro, Audi A7 Quattro, Audi A8, Audi A8L and Audi Q5 |

The Financing Class is defined as:

All consumers in the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who purchased or leased and still own or lease or owe money on one or more of the Defective Automobiles and financed the purchase or lease through Defendants Santander,  Veritas or a member of the Defendant Class.

The Purchasing Class and the Financing Class are referred to herein as the "Class" or "Classes". Excluded from the above Classes are Defendants and their respective officers, directors and employees.

52.     *Numerosity*. Members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are at least thousands of members of the Classes.

53.     ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact which predominate over any questions affecting individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

A.     Whether the Defective Automobiles contained the software algorithm or defeat device that turns off emissions  controls when driving normally and turns them on when the car is undergoing an emissions test;

B.     Whether the defeat device allows the Defective Vehicles to circumvent emissions tests;

C.     Whether VW knew about the defeat device and, if so, how long they have known about the defeat device;

D.     Whether the failure to disclose the existence of the defeat device constitutes the omission of a material fact;

E.     Whether VW had a duty to disclose the defeat device to Plaintiff and Class members;

F.     Whether VW breached the Defective Automobiles' express warranties;

G.      Whether VW breached the implied warranty of merchantability;

H.      Whether VW violated express warranty statutes;

I.      Whether VW violated consumer protection statutes;

J.      Whether Defendants Santander and Veritas and members of the Defendant

Class are subject to the same claims and defenses that Plaintiff and the

Financing Class have asserted and may assert against Defendant VW;

K.      Whether Defendants and members of the Defendant Class have been unjustly

enriched to the detriment of Plaintiff and the Classes;

L.      Whether Plaintiff and the members of the Classes have sustained damages as

a result of the conduct alleged herein and, if so, what is the proper measure

of such damages;

M.      Whether Plaintiff and the members of the Classes are entitled to rescission

and restitution and, if so, what is the proper measure of restitution; and

N.      Whether Plaintiff and Class members are entitled to declaratory and

injunctive relief.

54.     *Typicality*. Plaintiff's claims are typical of the claims of the members of the

Classes because, *inter alia*, all members of the Classes were injured through the common

misconduct described above. Plaintiff is advancing the same claims and legal theories on

behalf of themselves and all members of the Classes.

55.     *Adequacy of Representation*. Plaintiff will fairly and adequately protect the

18

interests of the members of the Classes. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes.

56.     ***Superiority***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for members of the proposed Classes to prosecute their claims individually. Most individual members of the Classes have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation and the significant costs attendant to litigation on this scale compared to the relatively small damages suffered by individual members of the Classes. Further, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, a class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here. Trial of Plaintiff's and members of the Classes' claims is manageable as a class action, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured. Without a class action, the members of the Classes will continue to suffer damages and Defendants' violations of law will proceed without remedy while Defendants continue to retain and reap the proceeds of its wrongful conduct.

57.     Defendants have acted and refused to act on grounds generally applicable to the Classes thereby making appropriate final injunctive relief with respect to the classes as a whole.

## DEFENDANT CLASS ALLEGATIONS

58.     Plaintiff also brings this action as a Defendant class action against Defendants Santander and Veritas and all others similarly situated, including John Does 1-25, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

59.     The Defendant Class consists of the following:

> All companies or other entities that financed, on behalf of any of the members of the Financing Class, the purchase or lease of any of the Defective Automobiles or who purchased or were assigned the Financing Contracts.

60.     *Numerosity*. Members of the Defendant Class are so numerous that joinder of all members is impracticable. While the exact number of Defendant Class members remains unknown at this time, upon information and belief, there are at least twenty-five members of the Defendant Class.

61.     *Existence and Predominance of Common Questions of Law and Fact*. This action involves common questions of law and fact which predominate over any questions affecting individual members of the Defendant Class. These common legal and factual questions include, but are not limited to, the following:

A.     Whether the Defective Automobiles contained the software algorithm or defeat device that turns off emissions  controls when driving normally and

turns them on when the car is undergoing an emissions test;

B.      Whether the defeat device allows the Defective Vehicles to circumvent emissions tests;

C.      Whether VW knew about the defeat device and, if so, how long they have known about the defeat device;

D.      Whether the failure to disclose the existence of the defeat device constitutes the omission of a material fact;

E.      Whether VW had a duty to disclose the defeat device to Plaintiff and Class Members;

F.      Whether VW breached the Defective Automobiles' express warranties;

G.      Whether VW breached the implied warranty of merchantability;

H.      Whether VW violated express warranty statutes;

I.      Whether VW violated consumer protection statutes;

J.      Whether Santander, Veritas and the Defendant Class members are subject to the same claims and defenses that Plaintiff and the Financing Class have and may assert against Defendant VW;

K.      Whether Defendants, including members of the Defendant Class, have been unjustly enriched to the detriment of Plaintiff and the Classes;

L.      Whether Plaintiff and the Financing Class have sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such

damages;

M.       Whether Plaintiff and the Classes are entitled to rescission and restitution
and, if so, what is the proper measure of restitution; and

N.       Whether Plaintiff and members of the Classes are entitled to declaratory and
injunctive relief, including as against the members of the Defendant Class.

62.       *Typicality*. The defenses of Defendants Santander and Veritas will be typical
of the defenses of the members of the Defendant Class because, *inter alia*, all members of
the Financing Class were injured through the common misconduct described above and
Plaintiff is advancing the same claims and legal theories on behalf of themselves and all
members of the Financing Class.

63.       *Adequacy of Representation*. Defendants Santander and Veritas are
anticipated to fairly and adequately protect the interests of the members of the Defendant
Class.

64.       *Superiority*. A Defendant Class action is superior to other available methods
for the fair and efficient adjudication of this controversy. The expense and burden of
individual litigation against each member of the Defendant Class weighs in favor of a
Defendant Class. Further, individualized litigation against each member of the Defendant
Class would create the danger of inconsistent or contradictory judgments arising from the
same set of facts. Individualized litigation would also increase the delay and expense to all
parties and the court system from the issues raised by this action. By contrast, a Defendant

22

Class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here. Trial of Plaintiff's and members of the Financing Class against Defendants Santander and Veritas as representative of the Defendant Class, is manageable as a class action, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured. Without a Defendant Class action, the members of the Financing Class will continue to suffer damages and Defendants' violations of law will proceed without remedy while Defendants continue to retain and reap the proceeds of its wrongful conduct.

65.     Defendant Class members have acted and refused to act on grounds generally applicable to the Financing Class thereby making appropriate final declaratory and injunctive relief with respect to the Defendant Class as a whole.

## <u>COUNT I</u>

### *Breach of Express Warranties*

66.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 40 and 45 – 57 as if fully set forth herein.

67.     Defendant VW sold, manufactured and/or distributed the inherently Defective Automobiles.  Such Defective Automobiles are goods.

68.     Defendant VW made certain representations, affirmations, promises, and descriptions, all of which became the basis of the bargain between Plaintiff, Class members, and Defendant VW. For example, Defendant VW expressly gave warranties by

specific words or actions to Plaintiff and Class members, both through the issuance of its written warranty accompanying the Defective Automobiles and/or its advertising campaigns, product packaging and literature and sales professionals used to promote the sale or lease and use of the Defective Automobiles. Defendant VW warranted to the general public, including Plaintiff and Class members, that the Defective Automobiles were effective, free from material defects in materials and/or workmanship and fit for their intended use. Defendant VW's breach of its express warranty caused Plaintiff and Class members to suffer injuries, including paying for a defective product and entering into transactions that Plaintiff and Class members would not have entered but for Defendant VW's acts.

69.    The expressed warranties described herein were part of the basis of the bargain for Plaintiff and each Class member (or was otherwise reasonably relied upon) when purchasing or leasing the Defective Automobiles.

70.    Plaintiff and each Class member purchased or leased a Defective Automobile Grill based upon Defendant VW's warranties that the Defective Automobiles were free from defects in material and workmanship.  Had Plaintiff or any reasonable consumer known about the defects and the numerous problems with the Defective Automobiles, no consumer would have purchased or leased a Defective Automobile or would not have paid the amount they paid or are continuing to pay.

71.    The Defective Automobiles did not conform to these express warranties

because the Defective Automobiles suffered from a design and manufacturing defect as discussed above.

72.     Defendant VW had actual, reasonable and adequate notice of Plaintiff's and the Class members' claim for breach of warranty and failed to cure.

73.     Defendant VW already had an opportunity to cure the defect in the Defective Automobiles because it knew of the alleged defects at the time the Defective Automobiles were sold or leased.

74.     As a direct and proximate result of Defendant VW's breach of its warranties, Plaintiff and Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease because they would not have purchased or leased the Defective Automobiles, and alternatively for the difference between the value of the Defective Automobiles as promised and the value of the Defective Automobiles as delivered. Additionally, Plaintiff and Class members either have or will incur economic damages at the point of repair in the form of the cost of repair.

75.     Plaintiff and Class members are entitled to legal and equitable relief, against Defendant VW, which would strike the unconscionable terms of Defendant VW's warranties, and are entitled to damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT II

### *Breach of Implied Warranties*

76.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 - 40 and 45 - 57.

77.     Defendant VW also impliedly warranted to members of the general public, including Plaintiff and Class members,that the Defective Automobiles were of merchantable quality, would pass without objection in the trade or business, were free from material defects and reasonably fit for the use for which they were intended by Defendant VW.

78.     Plaintiff and Class members based their decision on the skill and judgment of Defendant VW.

79.     Defendant VW breached its warranties by selling or leasing Defective Automobiles that were defective in materials.

80.     Plaintiff and Class members were intended to be the ultimate consumer of the Defective Automobiles.

81.     Defendant VW already was on notice of the defect on the basis of the facts alleged herein.

82.     As a direct and proximate result of Defendant VW's breach of their warranties, Plaintiff and Class members have suffered damages and continue to suffer

damages, including economic damages at the point of sale or lease because they would not have purchased or leased the Defective Automobiles, or alternatively for the difference between the value of the Defective Automobiles as promised and the value of the Defective Automobiles as delivered. Additionally, Plaintiff and Class members either have or will incur economic damages at the point of repair in the form of the cost of repair.

83.     Plaintiff and Class members are entitled to legal and equitable relief against Defendant VW, in the form of damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT III

### *Violation of Florida's Deceptive and Unfair Trade Practices Act*
**(§ 501.201 *et seq*., Fla. Stat. Ann.)**

84.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 – 40 and 45 - 57.

85.     Plaintiff and members of the two Classes who purchased or leased a Defective Automobile in the State of Florida, including members of the Financing Class who financed the purchase or lease of their ("Florida SubClass") are persons entitled to relief under Florida's Deceptive and Unfair Trade Practices Act, § 501.201, et seq., Fla. Stat. Ann. ("FDUPTA").

86.     Defendant VW sold or leased Plaintiff and Florida SubClass members Defective Automobiles that were defective under Florida law.

87.     The conduct of the Defendant VW, as set forth above, constitutes an unfair or deceptive act or practice under FDUTPA.  Defendant VW's conduct has been illegal, immoral, unethical, oppressive, or unconscionable, deceptive and attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.  Defendant VW's conduct was prohibited by section 501.202 and, accordingly, was unfair.  Plaintiff and the Florida Subclass hereby bring a private action pursuant to FDUTPA.

88.     As a direct and proximate result of Defendant VW's unfair or deceptive acts or practices, Plaintiff and Florida SubClass members have suffered and will continue to suffer injury, harm and economic loss as described above.

89.     Defendant VW's violations of FDUPTA, and other states laws nationwide were knowing or willful.

90.     Plaintiff and Florida SubClass members are entitled to a disgorgement of all monies paid for the Defective Automobiles by Plaintiff and Florida SubClass members.

## <u>COUNT IV</u>

### *Fraudulent Misrepresentation*

91.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1-40 and 45 - 57.

92.     Defendant VW misrepresented to Plaintiff and the Class that the Defective

Automobiles were reliable, free of defects and compliant with federal and state laws, among other claims. Defendant VW delivered this message in a number of advertising mediums in an effort to establish the VW brand and the Defective Automobiles specifically as a desirable product with consumers.

93.     The claims made by Defendant VW concerning their Defective Automobiles were false and misleading because they misrepresented the nature or qualities of the Defective Automobiles, and at the time Defendant VW made and publicized such factual claims, Defendant VW knew that the representations were false.

94.     The Defendant VW's claims were likely to deceive Plaintiff and the Class and, in fact, have actually deceived Plaintiff and the Class.

95.     Plaintiff and the Class acted in reasonable reliance upon the truth of the claims made by Defendant VW regarding the Defective Automobiles and became owners or lessees thereof. As a direct and proximate result of Plaintiff's and the Class' reliance upon the claims of Defendant VW, Plaintiff and the Class have sustained damages in the form of purchasing or leasing Defective Automobiles they never would have purchased or leased and are entitled to rescission.

## COUNT V

### *Unjust Enrichment*

96.     Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 – 95.

97.     Plaintiff and the Class members conferred a benefit upon Defendants, in the form of the price they paid and in most instances, continue to pay, for the Defective Automobiles.

98.     Defendants accepted and retained such benefits under circumstances which make such acceptance or retention inequitable.  Defendants were not entitled in law or in equity to receive such benefits.

99.     By accepting and retaining such benefits, Defendants have been unjustly enriched, to the detriment of Plaintiff and Class members.

100.    As a result, Defendants must make restitution to Plaintiff and Class members for the full value of the benefits conferred.

## COUNT VI

### *Magnuson-Moss Warranty Act*

### **(15 U.S.C. §§ 2301, *et seq.*) - Express and Implied Warranties**

101.    Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 – 40 and 45 - 57.

102.    The subject Defective Automobiles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

103.    Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).   They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the

obligations of its express and implied warranties.

104.   Defendant VW is a "supplier" and "warrantor" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

105.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

106.   Defendant VW's express warranties are written warranties within the meaning of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). Each of the Defendant VW breached its express warranties by selling or leasing the Defective Automobiles that were defective in design, material, and workmanship.

107.   Defendant VW provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their Defective Automobiles that is an "implied  warranty" within the meaning of  the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(7).   As a part of the implied warranty of merchantability, Defendant VW warranted that the subject Defective Automobiles were properly designed, manufactured, and marketed, and were adequately labeled.

108.   Defendant VW breached these express and implied warranties, as described in more detail above, and is therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1).

109.   Any efforts to limit  the  express or implied warranties in  a  manner that would    exclude  coverage  for  the  Defective  Automobiles  and  their  defects  is

unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Automobiles is null and void.

110.   Plaintiff and the other Class members have had sufficient direct dealings with either Defendant VW or their agents to establish privity of contract.

111.   Nonetheless, privity is not required here because Plaintiff and other Class members are intended third-party beneficiaries of contracts between Defendant VW and its dealers, and specifically, of the implied warranties.   In addition, the dealers were not intended to be the ultimate consumers of the subject Defective Automobiles and have no rights under the warranty agreements provided with the Defective Automobiles; the warranty agreements were designed for and intended to benefit consumers.

112.   Requiring an informal dispute settlement procedure, or affording Defendant VW a reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile.   At the time of sale or lease of each Defective Automobile, Defendant VW knew of its misrepresentations concerning the inability of the Defective Automobiles to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective manufacture of the Defective Automobiles.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement, whether under the Magnuson-Moss Warranty Act, that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendant VW a reasonable opportunity to cure its breach of warranties is excused and thereby deemed

satisfied.

113.    In addition, pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and would not be required to give the Defendant VW notice and an opportunity to cure until at the earliest, such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

114.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of their Defective Automobiles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

115.    Further, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2301(d)(l).

## COUNT VII
### *Rescission and Restitution*

116.    Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 – 100.

117.    Plaintiff, for all members of the Financing Class she seeks to represent, and on the basis of the fraudulent or illegal activity described herein, seeks rescission of the Financing Contracts that were entered into in relation to the purchase or lease of a Defective Automobile by members of the Financing Class who at the time of this Complaint still own or lease one or more of the Defective Automobiles. Plaintiff also seeks, for the members of the Financing Class, restitution of all amounts paid on the Financing Contracts. Plaintiff is entitled to rescission because by delivering Defective Automobiles instead of the vehicles Plaintiff and members of the Financing Class were promised.

118.    Plaintiff seeks rescission and restitution based upon the common law as it regards contract induced by fraud and/or illegal contracts, the deceptive trade practices statutes of all states and territories of the United States, and according to the Uniform Commercial Code as enacted by states.

119.    Plaintiff hereby gives notice to Defendants Santander and Veritas and members of the Defendant Class of the intent of Plaintiff and the Financing Class members to rescind the contracts and return their Defective Automobiles, to reject the Defective Automobiles sold to them as failing to conform to the Financing Contracts, to revoke any acceptance of the Defective Automobiles, and of their intent to withhold the remainder of the purchase price still owing under their Financing Contracts.

## COUNT VIII

### *Declaratory and Injunctive Relief*

120.    Plaintiff incorporates by reference and realleges the allegations of paragraphs 1 – 100.

121.    Plaintiff seeks immediate and permanent injunctive and declaratory relief. If Plaintiff and members of the Financing Class continue to make monthly payments for fear that Defendants Santander and Veritas and members of the Defendant Class will injure their ability to obtain credit, they are deprived of the remedy that the FTC has allowed them. They also may expose themselves to claims that they have waived or ratified the fraud and illegality that induced them into the Financing Contracts. If Plaintiff and the members of the Financing Class stop making payments, as is their right, Defendants Santander and Veritas and members of the Defendant Class may report derogatory information to credit reporting agencies. The requested declaratory injunctive relief is to declare that Plaintiff and the members of the Financing Class may withhold payment to Defendants Santander and Veritas and members of the Defendant Class for the Defective Automobiles under the Financing Contracts without concern that Defendants Santander and Veritas and members of the Defendant Class will take steps that will negatively affect the credit of Plaintiff and members of the Financing Class by, among other means, reporting derogatory credit information such as late payments, no payments, voluntary surrender, or even repossession. Because of the fraud and illegality alleged herein, Plaintiff and the Financing Class should not be prejudiced in any way for exercising their right to

withhold payment. Defendants Santander and Veritas and members of the Defendant Class should be enjoined from reporting to any credit reporting agency any derogatory information related to the withholding of payments.

122.  VW admittedly defrauded hundreds of thousands of U.S. consumers who purchased or leased the Defective Automobiles. The fraudulent scheme is detailed in lawsuits, by the EPA in press releases, and by the testimony of VW presented before Congress. The probability of success on the merits of this case for Plaintiff and the members of the Financing Class is high.

123.  Plaintiff and the members of the Financing Class are without an adequate remedy at law. If Plaintiff and the members of the Financing Class are required to continue to make payments or run the risk of negative credit reports by Defendants Santander and Veritas and members of the Defendant Class, Plaintiff and the Financing Class will have lost the valuable rights granted to them by the FTC and will also run the risk of waiving their rescission rights, or at least facing a defense that is not now present.

124.  If Defendants Santander and Veritas or members of the Defendant Class Plaintiff are permitted to report any negative or derogatory credit information about Plaintiff and the members of the Financing Class who withhold payments, then Plaintiff and the members of the Financing Class will be irreparably harmed.

125.  Injunctive relief will also further the public interest underlying the FTC Holder Rule. The Rule would operate to prevent the situation where, as here, the consumer

has a valid claim against Defendant VW, but would still have to pay for the fraud tainted Defective Automobiles pending resolution of the dispute with VW. To give effect to the FTC Holder Rule and balance the hardship between the innocent purchasers and Defendants, a preliminary injunction is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for judgment against the Defendants for the following relief:

A.      Certification of the proposed Classes and appointment of Plaintiff's counsel as Counsel for the Classes;

B.      Certification of the proposed Defendant Class;

C.      An order temporarily and permanently enjoining VW from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of an effective recall or free replacement program;

D.      Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.      Revocation of acceptance;

F.      For treble and/or punitive damages as permitted by applicable laws;

G.      An order requiring VW to pay both pre- and post-judgment interest on any

amounts awarded;

H.     For rescission of the Financing Contracts relating to the purchase of the Defective Automobiles, and restitution of amounts paid under such Financing Contracts;

I.     For a preliminary injunction to prevent any reporting of derogatory or negative information released to the financing or lease of Defective Automobiles through Santander and Veritas and members of the Defendant Class;

J.     For a declaration that the Financing Contracts are null and void and Plaintiff and the members of the Financing Class need not make any further payment pursuant to such Financing Contracts;

K.     For an award of attorney's fees and costs as provided by any applicable provision of law; and

L.     For such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Dated: January 15, 2016

*/s/ Kenneth G. Gilman_____*
Kenneth G. Gilman
GILMAN LAW LLP
8951 Bonita Beach Road, S.E. Suite 525
Bonita Springs, FL 34135
Telephone: (781) 307-2526
kgilman@gilmanlawllp.com

*Attorneys for Plaintiff*